Rel: May 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2023-0794

_____

### W.S. II

v.

### Houston County Department of Human Resources

_____

### CL-2023-0805

_____

### E.A.

v.

### Houston County Department of Human Resources

### Appeals from Houston Juvenile Court
### (JU-21-344.02)

FRIDY, Judge.

W.S. II ("the father") and E.A. ("the mother") appeal separately from a judgment of the Houston Juvenile Court ("the juvenile court") terminating their parental rights to their child, E.H.S. ("the child"). Both parents challenge the juvenile court's subject-matter jurisdiction over this action under the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975, and it appears that that issue may be dispositive. As discussed herein, however, the record on appeal does not include sufficient evidence for us to review the jurisdictional issue. Therefore, the cause must be remanded to the juvenile court for it to determine whether it has subject-matter jurisdiction under the UCCJEA.

Background

The Houston County Department of Human Resources ("DHR") filed a petition in the juvenile court to terminate the mother's parental rights on December 19, 2022. On June 15, 2023, it filed an amended petition that sought, in addition, to terminate the father's parental rights. The petitions acknowledged that both the parents were living in Florida. The juvenile court held the trial in this matter on October 30,

2

2023. Although subject-matter jurisdiction was not an issue at the trial, some evidence relevant to that issue was presented. It was undisputed that the child was born in Dothan in early November 2021, at which time the mother and the child tested positive for methamphetamine. Anna Starling, the DHR caseworker involved in this matter, testified that DHR had assumed custody of the child about one week after her birth. The child had been in the same Alabama foster home since that time, Starling said.

The mother testified that she had lived at the same address in Clarksville, Florida -- about an hour-and-fifteen-minute drive from Dothan -- for about four years. Before giving birth to the child, she said, she had been convicted in Florida of felony possession of methamphetamine. According to the mother, she had violated her parole, and an active warrant for her arrest existed when the child was born. The mother also said that she and the father had six other children, and the State of Florida had terminated their parental rights to all of them.

The mother testified that she came to Alabama to have the child because of "the situation that I had with my kids in Florida, as well as the warrant." She said that her contractions had started and that she

3

was in "active labor" when she made the trip from Florida to Dothan to have the child. The mother testified that, about twelve hours after she delivered the child, she was arrested at the hospital in Dothan and charged with violating her parole. Starling characterized the mother as a fugitive from justice. The mother testified that when she was released from the hospital, she was held in the Houston County jail for twenty days before law-enforcement officials from Bay County, Florida, returned her to Florida. The mother said she then served eighteen months in prison in Florida and had been released only one month before the trial of this matter.

The mother testified that she had never lived in Alabama and did not know anyone in the state. The obstetrician who had provided her with prenatal care was in Marianna, Florida, she said. Other than giving birth to the child in Alabama, her contact with DHR, and the two visits she had had with the child in Houston County, the mother said, she had no connections with Alabama. There is no evidence regarding whether the mother had intended to return to Florida with the child if Florida law-enforcement officials had not taken her back to that state involuntarily.

The father testified that he has always been a Florida resident and, other than the child, he had no connections to Alabama. He said that for the four or five months immediately preceding the trial, he had lived in Blountstown, Florida. Before that, he said, he had lived in Bristol, Florida, for a little more than a year. He said that when the child was born, he was incarcerated in Jackson County, Florida. The mother corroborated the father's testimony.

The juvenile court entered a judgment terminating the parental rights of the mother and the father on October 31, 2023. In the judgment, the juvenile court stated without explanation that jurisdiction was proper and that the mother and the father had been served with proper notice of the proceedings in accordance with the Alabama Rules of Civil Procedure. It made no findings regarding its subject-matter jurisdiction under the UCCJEA, which governs jurisdiction of child-custody matters, including actions to terminate parental rights.

The mother and the father did not file motions to alter, amend, or vacate the judgment, but each filed a timely notice of appeal to this court. DHR did not favor this court with an appellate brief.

## Analysis

In their respective appeals, the mother and the father both contend that the juvenile court lacked subject-matter jurisdiction under the UCCJEA to enter a judgment terminating their parental rights because, they say, Alabama was not the child's home state. Neither party presented this argument to the juvenile court. However, it is well settled that "the issue of subject-matter jurisdiction may not be waived, and it may be raised at any time, even for the first time on appeal or by an appellate court, ex mero motu." K.L. v. M.W., [Ms. CL-2023-0274, Jan. 5, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024).

The UCCJEA "is the exclusive jurisdictional basis for making a child custody determination by a court of this state," § 30-3B-201(b), Ala. Code 1975, which includes establishing subject-matter jurisdiction in child-custody proceedings that involve or may involve more than one jurisdiction. H.T. v. Cleburne Cnty. Dep't of Hum. Res., 163 So. 3d 1054, 1062 (Ala. Civ. App. 2014); R.L. v. J.E.R., 69 So. 3d 898, 900 (Ala. Civ. App. 2011). The UCCJEA encompasses proceedings for the termination of parental rights. § 30-3B-102(4), Ala. Code 1975.

In its petition and amended petition seeking the termination of the mother's and the father's parental rights, DHR alleged that both the

6

mother and the father lived in Florida. It further alleged that the juvenile court had jurisdiction in this case because, it said, the child was a resident of Houston County. The petitions state that, on November 10, 2021 -- within days of the child's birth -- the juvenile court had found the child to be dependent in a separate action ("the dependency action") and had placed her in the legal custody of DHR. Although DHR recognized that both of the child's parents were residents of Florida, it does not appear from the record that DHR or the juvenile court considered the UCCJEA to determine whether the juvenile court had subject-matter jurisdiction.

The November 10, 2021, dependency judgment is not included in the record on appeal in this matter. The juvenile court would have had continuing, exclusive jurisdiction to consider the termination of the mother's and the father's parental rights to the child if it had made a child custody determination consistent with § 30-3B-201 and until it

> "determine[d] that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or … [it] or a court of another state determine[d] that the child, the child's parents, and any person acting as a parent [did] not presently reside in this state."

7

§ 30-3B-202(a)(1)-(2), Ala. Code 1975 (emphasis added). Therefore, to have subject-matter jurisdiction in the current action, the juvenile court would had to have had subject matter-jurisdiction consistent with the requirements of § 30-3B-201 when it made its initial child-custody determination, which appears to have been the November 10, 2021, dependency judgment. Patrick v. Williams, 952 So. 2d 1131, 1138 (Ala. Civ. App. 2006).

Section 20-3B-201 provides that an Alabama court has subject-matter jurisdiction over an initial child-custody determination if:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208 [of this chapter], and:

"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208 [of this chapter]; or

"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."

§ 30-3B-201(a). See also H.T. v. Cleburne Cnty. Dep't of Hum. Res., 163 So. 3d 1054, 1062-67 (Ala. Civ. App. 2014) (applying the UCCJEA under circumstances similar to those in the instant case).

Because the juvenile court's subject-matter jurisdiction was not challenged in the termination action, the parties did not develop a record that would enable us to conduct a meaningful review regarding whether any of the criteria set forth in § 30-3B-201(a) were met. Additionally, the record of the dependency action is not included in the record on appeal. Therefore, we are unable to determine whether the juvenile court's subject-matter jurisdiction was invoked under the UCCJEA at the outset of this matter. However, the evidence and information that is before us indicates that there may be merit to the mother and the father's

9

contention that the juvenile court lacked subject-matter jurisdiction to consider whether to terminate their parental rights.

Because we are without sufficient information to conduct a meaningful review of the jurisdictional question, we reinvest the juvenile court with jurisdiction for it to determine whether, under the UCCJEA, it had subject-matter jurisdiction in this case and to return its decision to this court within forty-two days. The juvenile court is instructed to supplement the record on appeal with any additional proceedings it may conduct to comply with this opinion. It should also supplement the record with the record in the dependency action if it considers evidence from that proceeding.

CL-2023-0794 -- REMANDED WITH INSTRUCTIONS.

CL-2023-0805 -- REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards, Hanson, and Lewis, JJ., concur.